**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
SHARON DORSETT, individually and as the
Administratrix of the Estate of JO'ANNA BIRD,

                Plaintiff,                    **MEMORANDUM OF**
                                                          **DECISION AND ORDER**
              -against-                      10-cv-1258 (ADS)(AKT)

COUNTY OF NASSAU, NASSAU COUNTY
POLICE DEPARTMENT, OFFICE OF THE
NASSAU COUNTY DISTRICT ATTORNEY,
Detective ROBERT ARIOLA, in his official and
individual capacities, Police Officers and/or
Detectives JOHN AND JANE DOES 1–10,
District Attorney JOHN AND JANE DOES 1–
10, and LEONARDO VALDEZ-CRUZ,

                Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**Law Offices of Frederick K. Brewington, Esq.**
*Attorneys for the plaintiff*
556 Peninsula Boulevard
Hempstead, NY 11550
       By:    Frederick K. Brewington, Esq.,
                Valerie M. Cartright, Esq., of Counsel

**Nassau County Attorney John Ciampoli**
*Attorney for all named defendants, except Leonardo Valdez-Cruz*
1 West Street
Mineola, NY 11501
       By:    Assistant County Attorney Sondra Meryl Toscano,
                Assistant County Attorney Liora M. Ben-Sorek

**Levin Sullivan Koch & Schulz, LLP**
*Attorneys for the intervenor plaintiffs Newsday LLC and News 12 Networks LLC*
321 West 44th Street, Suite 510
New York, NY 10036
       By:    Jacob P. Goldstein, Esq., of Counsel

**NO APPEARANCE:**

Defendant Leonardo Valdez-Cruz

**SPATT, District Judge.**

The present plaintiff, Sharon Dorsett, and two news organizations, Newsday LLC and News 12 Networks, LLC, object to the entry of a protective order in this case that prohibits the plaintiff from disseminating an internal report that the plaintiff obtained from the defendant Nassau County Police Department in discovery. For the reasons that follow, the Court affirms the entry of the protective order.

## I. BACKGROUND

On March 19, 2009, Leonardo Valdez-Cruz murdered Jo'Anna Bird in her Nassau County home. According to the plaintiff, Bird had repeatedly appealed to the Nassau County Police for protection from Valdez-Cruz prior to her March 19, 2009 death, but the police department had ignored her pleas. On the one year anniversary of Bird's killing, her mother, Sharon Dorsett, commenced the present civil action against (1) Nassau County, (2) the Nassau County Police Department, (3) the Office of the Nassau County District Attorney, (4) Nassau County Police Detective Robert Ariola, and (5) certain unnamed Nassau County police officers and district attorneys (collectively, the "County Defendants"), asserting various federal and state causes of action based on the County Defendants' alleged wrongful failure to protect Bird from Valdez-Cruz. Dorsett also named as a defendant Valdez-Cruz, who is currently serving a prison sentence for Bird's murder and who has defaulted in this case.

After Bird was killed, the Nassau County Police Department Internal Affairs Unit began an investigation into the police department's involvement in the events

surrounding Bird's death. The result was Internal Affairs Unit Report 14-2009 ("the IAU Report"), a 712-page document that the plaintiff then sought to obtain through discovery in this case. In their initial response to this request, the County Defendants produced only a highly redacted version of the report. In reply, the plaintiff moved to compel production of the full document. On October 29, 2010, after reviewing the IAU Report *in camera*, United States Magistrate Judge A. Kathleen Tomlinson directed the County Defendants to produce the report with only minor redactions, and with only two of the 712 pages marked "attorneys' eyes only". The County Defendants complied with this order sometime before November 10, 2011, and delivered the IAU Report to the plaintiff. At no time before or at production of the IAU Report did the County Defendants request a protective order limiting the dissemination of the report's contents.

Approximately twenty-five days after production of the IAU Report, on November 30, 2010, counsel for the plaintiff announced that he would hold a press conference on Wednesday, December 1, 2010, at which he would make public the contents of the IAU Report. The County Defendants learned of the impending event before it took place, and immediately contacted Judge Tomlinson to request a temporary restraining order barring any dissemination of the IAU Report by the plaintiff. Judge Tomlinson granted the motion, and requested briefing on the issue of whether the plaintiff should be barred from publishing the IAU Report on a more long-term basis. In response, Judge Tomlinson received papers from the plaintiff, the County Defendants, and several *amici curiae*. In addition, Judge Tomlinson heard and granted a petition by Newsday LLC and News 12 Networks, LLC (collectively, the "Press Intervenors") to intervene and oppose the County Defendants' request to keep the report secret.

On January 14, 2011 and January 19, 2011, Judge Tomlinson resolved the dispute over the IAU Report by issuing the two orders presently being appealed to this Court. First, in her January 14, 2011 Order, Judge Tomlinson found that, while no injunction should issue concerning the IAU Report, the County Defendants had shown "good cause" to entitle them to a Fed. R. Civ. P. 26(c) protective order that prohibited the plaintiff from publishing the IAU Report outside of this litigation. See Dorsett v. County of Nassau, 762 F. Supp. 2d 500 (E.D.N.Y. 2011) ("Dorsett I"). Second, in her January 19, 2011 Order (published on January 20, 2011), Judge Tomlinson outlined the limitations on the plaintiff's use of the IAU Report within the litigation.

On January 28 and 29, the Press Intervenors and the plaintiff, respectively, filed objections to both of Judge Tomlinson's Orders. The plaintiff and the Press Intervenors contended, among other things, that the County Defendants waived their right to request confidential treatment of the IAU Report when they produced it without requesting such protection. The County Defendants deny that they waived this right, and do not object to Judge Tomlinson's Orders.

On July 20, 2011, approximately seven months after the parties' objections were filed, but before this Court ruled on those objections, the County Defendants filed a letter with Judge Tomlinson indicating that they had signed a settlement agreement and release with the plaintiff, and requesting that all court deadlines be held in abeyance. Two days later, on July 22, 2011, the Press Intervenors wrote the Court to request that, notwithstanding the settlement, the Court rule on their objections to Judge Tomlinson's Orders, as the Press Intervenors retained an asserted First Amendment interest in the publication of the IAU Report, regardless of the status of this case. The County

Defendants have filed an opposition to this request. For their part, the plaintiff has not expressly indicated whether she continues to object to Judge Tomlinson's Orders now that she has apparently settled her claims against the County Defendants. Without such an indication, the Court assumes that the plaintiff's objections remain pending, as Judge Tomlinson's order precluding dissemination will remain in effect after this case has concluded.

## II. DISCUSSION

### A. As to Judge Tomlinson's January 19, 2011 Order

As a preliminary matter, the Court finds that all parties' objections to Judge Tomlinson's January 19, 2011 Order are mooted by the settlement of the case. The portions of the January 19, 2011 Order to which the parties object relate solely to the plaintiff's use of the IAU Report in the context of this litigation, and do not affect the broader publication of that document. Those objections therefore have no relevance now that this litigation has provisionally ended. The objections are denied as moot, with leave to re-file if a final settlement is not consummated in this case.

### B. As to Judge Tomlinson's January 14, 2011 Order

By contrast, Judge Tomlinson's January 14, 2011 Order will continue to affect both the plaintiff and the Press Intervenors even after a settlement has been consummated. The Court therefore finds that the parties' objections to this Order are not mooted, and now addresses them.

#### 1. Standard of Review

The plaintiff and the Press Intervenors appeal from a protective order issued pursuant to Rule 26(c), which is a non-dispositive matter. See, e.g., Thomas E. Hoar, Inc.

v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990). When reviewing a Magistrate Judge's decision on a non-dispositive matter, the Court will modify or set aside any portion of the magistrate's order found to be "clearly erroneous or contrary to law." Id.; 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any [non-dispositive] pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."); Fed.R.Civ.P. Rule 72(a). A finding is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948); United States v. Isiofia, 370 F.3d 226, 232 (2d Cir. 2004). An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." Catskill Dev., L.L.C. v. Park Place Entrn't Corp., 206 F.R.D. 78, 86 (S.D.N.Y. 2002) (citation omitted).

Nevertheless, the Press Intervenors urge the Court to review Judge Tomlinson's Order *de novo*. They maintain that the Order "reflect[s] [a] final adjudication[] on the First Amendment rights of the Press Intervenors and others," and therefore must be analyzed under the non-deferential standard that applies to dispositive determinations by Magistrate Judges. (Press Intervenors' Objections at 9, citing Fed. R. Civ. P. 72(b).) In the Court's view, the Press Intervenors' argument goes too far. Under their reasoning, *every* Rule 26(c) protective order limiting the public dissemination of documents—and the Court notes that this type of protective order is granted daily in federal cases—would be subject to *de novo* review if challenged, because every such order has final First Amendment implications. The Court cannot agree that *de novo* review of such a common part of discovery is appropriate. See, e.g., Dubai Islamic Bank v. Citibank,

N.A., 211 F. Supp. 2d 447, 448–49 (S.D.N.Y. 2001) (applying the "clearly erroneous or contrary to law" standard of review to a challenge to a Rule 26(c) protective order limiting dissemination of discovery materials).

Moreover, the Press Intervenors present no case that supports reviewing a Rule 26(c) protective order *de novo*. Instead, the Press Intervenors rely on cases in which parties were permitted to file interlocutory appeals to challenge gag orders. See United States v. Cutler, 58 F.3d 825, 832–33 (2d Cir. 1995); United States v. Salameh, 992 F.2d 445 (2d Cir. 1993) (*per curiam*); In re N.Y. Times Co., 878 F.2d 67 (2d Cir. 1989) (*per curiam*); ABC, Inc. v. Stewart, 360 F.3d 90, 97 (2d Cir. 2004). The Court finds these cases inapposite, and reviews Judge Tomlinson's Order under the "clearly erroneous or contrary to law" standard.

**2. The First Amendment's Restrictions on the Protective Order**

Rule 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." It is well-settled that courts have broad power to enter protective orders under Rule 26(c) that prohibit parties from sharing discovery materials with non-litigants (such orders are typically referred to as "confidentiality orders"). See, e.g., AT & T Corp. v. Sprint Corp., 407 F.3d 560, 562 (2d Cir. 2005) (recognizing the validity of a Rule 26(c) confidentiality order entered on good cause).

Nevertheless, a confidentiality order limits a litigant's speech rights, and this implicates the First Amendment free speech clause. U.S. Const. 1st Am. ("Congress shall make no law . . . abridging the freedom of speech"). In 1984, the United States Supreme Court resolved this conflict, deciding the seminal case analyzing the interplay

7

between confidentiality orders and the First Amendment. The facts of that case, Seattle Times Co. v. Rhinehart, 467 U.S. 20, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984), involved a religious group who sued two newspapers for suggesting that the religious group engaged in dubious practices. During discovery, the newspapers sought and received detailed information about the religious organization, but were barred by a confidentiality order from publishing what they had received. The newspapers challenged the confidentiality order in the United States Supreme Court on First Amendment grounds, without success.

Explaining the Court's decision, Justice Powell recognized that "there is certainly a public interest in knowing more about [the religious group]," and that this public interest possibly extended to every single item that the newspapers had received from the religious group in discovery. Id., 467 U.S. at 31. However, Justice Powell noted that a party's reception of documents in civil discovery was "a matter of legislative grace," and therefore, that "continued court control over the discovered information does not raise the same specter of government censorship that such control might suggest in other situations." Id. at 32. Justice Powell did acknowledge that parties receiving discovery information have a First Amendment right to freely use that information, but ultimately explained that this right was relatively limited. Thus, Justice Powell stated for the Court that where "a protective order [1] is entered on a showing of good cause as required by Rule 26(c), [2] is limited to the context of pretrial civil discovery, and [3] does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment."

Here, in objecting to Judge Tomlinson's January 14, 2011 Order, neither party suggests that, if timely requested and analyzed under the First Amendment and Rule

8

26(c) good cause standard, the County Defendants would have been denied a confidentiality order. The objectors *do* suggest that, even if timely requested, the protective order places improper limits on the use of the IAU Report in litigation. However, the Court finds that these objections have been mooted by the settlement of the case. Further, to the extent that the Court could read into the parties' submissions an objection to the County Defendants' "good cause" for a timely protective order, the Court finds that Judge Tomlinson adequately identified sufficient good cause for the order. See Dorsett I, 762 F. Supp. 2d at 514–26 (finding that the County Defendants' interests in keeping certain law enforcement techniques and sources of information non-public established the requisite harm to establish good cause for a protective order).

Nevertheless, the Press Intervenors do make an additional First Amendment-based objection to the January 14, 2011 Order. According to the Press Intervenors, Judge Tomlinson incorrectly premised the protective order on her Rule 26(c) power to prohibit public dissemination of discovery materials on a mere showing of good cause. The Press Intervenors maintain that, given that the County Defendants had already produced the IAU Report when the confidentiality order was entered, the confidentiality order is more accurately characterized as a gag order—which is only supported by an exacting showing of harm not made here. Thus, the Press Intervenors urge the Court to ignore whether there was mere good cause for the protective order, and reverse what is actually an improper gag order.

In the Court's view, this argument suffers from two deficiencies. First, the Press Intervenors' argument requires that, once the County Defendants delivered the IAU Report to the plaintiff without restriction, a court could no longer limit the plaintiff's use

of that document based on a showing of good cause. However, the cases that the Press Intervenors rely on do not support this contention. Those cases, <u>Smith v. Daily Mail Pub. Co.</u>, 443 U.S. 97, 99 S. Ct. 2667, 61 L. Ed. 2d 399 (1979), and <u>Nebraska Press Ass'n v. Stuart</u>, 427 U.S. 539, 96 S. Ct. 2791, 49 L. Ed. 2d 683 (1976), stand for the proposition that, once information is made generally available to the public, the First Amendment strongly protects speakers' rights to repeat that information. Here, the IAU Report was *not* made generally available to the public, even in a limited forum. Rather, it was produced only to the plaintiff, and unlike in <u>Smith</u> and <u>Nebraska Press Association</u>, the public's access to the IAU Report was contingent on the plaintiff's decision to share it.

To be sure, the plaintiff could have published the IAU Report before the County Defendants requested a confidentiality order. However, the plaintiff did not do so, and the Court therefore does not read <u>Smith</u> or <u>Nebraska Press Association</u> as applying to the present situation. As the Press Intervenors suggest, there is a "bright line" in First Amendment analysis between the treatment of public and non-public information related to judicial proceedings. However, the Press Intervenors provide no support for showing a "bright line" between the First Amendment's treatment of (1) non-public discovery documents whose use was restricted at the time of production, and (2) identical documents whose use at the time of production was not restricted.

Second, the Press Intervenors' characterization of the protective order as a gag order ignores differences between the breadth of the protective order and the breadth of a true gag order. Here, the plaintiff is not generally precluded from discussing her case in public. More importantly, she is also not precluded from discussing the contents of the IAU Report if she obtains that information from a source other than civil discovery in this

10

case. Cf. Seattle Times Co., 467 U.S. at 34 ("the party may disseminate the identical information covered by the protective order as long as the information is gained through means independent of the court's processes"). Unlike a gag order, which places general limits on speech regardless of the source of the information being shared, the present protective order only precludes the dissemination of the IAU Report as received through discovery. The single fact that the Press Intervenors identify so as to transform this protective order into a gag order is that the plaintiff possessed the IAU Report without restriction—and also without publishing it—for approximately twenty-five days. The Court cannot conclude from this that the plaintiffs are entitled to stronger First Amendment protections, or that the protective order is in fact a gag order. As such, the Court finds that, in spite of the fact that the County Defendants produced the IAU Report without restriction, the First Amendment only requires a showing of good cause to limit the dissemination of the still-unpublished IAU Report.

### 3. Waiver

Nevertheless, while the First Amendment does not require more than a showing of good cause in this situation, it is not obvious that, even with a showing of good cause, Rule 26(c) permits a confidentiality order to issue when it is requested after the relevant document has been produced without restriction. This, then, is the most substantial challenge to the January 14, 2011 Order: namely, whether the County Defendants' production of the IAU Report without restriction waived its right to later request confidential treatment for that document. It is at least arguable that, because this objection has no First Amendment dimension, the Press Intervenors have no standing to make it. However, as this does not affect the outcome of the Court's decision, the Court

need not resolve this issue.  With respect to the substance of the objection, Judge Tomlinson addressed this issue in the January 14, 2011 Order itself, and ultimately determined that the County Defendants did not waive their right to seek a confidentiality order.  Here, the Court finds that, given the deferential standard under which the Court reviews Judge Tomlinson's decision, her finding granting the protective order should not be disturbed.

As a preliminary matter, the objectors both assert that the County Defendants waived their right to seek a protective order by failing to request one prior to September 3, 2010, approximately two months before the IAU Report was produced in unredacted form.  Judge Tomlinson dismissed this contention in her decision, noting that, while she had set September 3, 2010 as a deadline for requesting protective orders, this deadline did not apply to confidentiality orders, which she had discussed separately with the parties.  See Dorsett I, 762 F. Supp. 2d at 527–28.  The Court has reviewed the relevant documents, and finds that Judge Tomlinson's interpretation of her own order will stand.  The County Defendants did not waive their right to seek a confidentiality order by failing to request such an order by September 3, 2010.

More troublesome is the fact that the County Defendants also failed to request a confidentiality order before or at the time they produced the IAU Report—the date of production being sometime between October 29, 2010 and November 10, 2010.  In the Court's view, there is no doubt that this failure to request a confidentiality order waived the County Defendants' right to seek redress had the plaintiff published the IAU Report while no protective order was in place.  Similarly, there is no doubt that, if the plaintiff had made the document public, the First Amendment would require more than a showing

of good cause to limit further dissemination. However, the relevant question here is whether the County Defendants, by failing to seek a confidentiality order at the time of production, waived their right to seek a confidentiality order *after* production, but *before* the IAU Report was published.

As a starting point, Rule 26(c) makes no mention of a timeliness requirement for seeking a protective order—although its pre-1970 predecessor required that requests for protective orders be made "seasonably". See Fed. R. Civ. P. 30(b), 48 F.R.D. 487, 510 (1970). Nevertheless, several courts have held that Rule 26(c) implicitly requires parties to request a protective order at the time of production, and provides that a failure to do so permanently waives the right to such an order. See, e.g., Schiller v. City of New York, Nos. 04-cv-7922 & 04-cv-7921, 2007 WL 136149, *5 (S.D.N.Y. Jan. 19, 2007) (Francis, M.J.) (holding that production of documents without a claim of privilege waives the right to later claim that privilege); Brittain v. Stroh Brewery Co., 136 F.R.D. 408, 413 (M.D.N.C. 1991) (holding that production of documents without seeking a protective order waives the right to such an order, unless there is a showing of good cause for the delay); Nestle Foods Corp. v. Aetna Cas. and Sur. Co., 129 F.R.D. 483, 487 (D.N.J. 1990) ("While this Court looks first to the substantive ground of whether defendants have demonstrated good cause for a protective order, nonetheless, the Court cannot ignore the untimeliness of these motions."); U.S. v. International Business Machines Corp., 70 F.R.D. 700, 701 (S.D.N.Y. 1976) ("CIA's first motion [for a protective order] was dated more than two months after the return date of the subpoena and weeks after CIA produced documents subject to the subpoena. It is therefore untimely"). Even Judge Tomlinson has previously held that "objections not timely stated may be deemed

waived." Ehrlich v. Incorporated Village of Sea Cliff, No. 04-cv-4025, 2007 WL 1593241 (E.D.N.Y. Jun. 1, 2007) (also stating that "[a] waiver based upon a failure to timely object applies not only to general objections to discovery demands, but also to a motion for a protective order which must be served before the date set for production." (internal quotations omitted)).

However, the Court is aware of no Second Circuit law that requires this outcome. In addition, some district courts have at least implicitly held to the contrary, granting confidentiality orders even after documents had been produced—although the relevance of some of these cases is suspect. See Standard Inv. Chartered, Inc. v. Nat'l Assoc. of Securities Dealers, 621 F. Supp. 2d 55 (S.D.N.Y. 2007), aff'd 347 Fed. App'x 615 (2d Cir. 2009) (granting a confidentiality order after production was made, although the produced documents had been subject to a private confidentiality agreement); Peskoff v. Faber, 230 F.R.D. 25, 33–34 (D.D.C. 2005) (granting a retroactive confidentiality order, although most of the terms of the order were agreed to by the parties); Byrnes v. Empire Blue Cross Blue Shield, No. 98-cv-8520, 2000 WL 60221, **1, 5 (S.D.N.Y. Jan. 25, 2000) (Dolinger, M.J.) (granting "[a]t the tail-end of discovery" a motion to have discovery materials treated as confidential).

Ultimately, in the absence of clear authority on this issue from the Second Circuit or Rule 26(c), the Court resolves the parties' dispute based on the core definition of waiver, which is "'an intentional relinquishment or abandonment of a known right or privilege.'" Doe v. Marsh, 105 F.3d 106, 111 (2d Cir. 1997) (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461 (1938)). As noted above, many courts have implicitly found that production of documents without a protective order in

place constitutes a knowing waiver of a right to Rule 26(c) protection. However, the specific facts of this case make that conclusion untenable. First, it is obvious that the County Defendants strenuously attempted to prevent the disclosure of the IAU Report to the plaintiff, and produced it in unredacted form only when compelled. Second, there is no doubt that the County Defendants viewed the IAU Report as very sensitive, and that the County Defendants had denied previous attempts by various parties to obtain the IAU Report through New York's Freedom of Information Law. Third, within hours of discovering that the plaintiff sought to publish the IAU Report, the County Defendants moved to prevent its dissemination.

To be sure, the Court is unimpressed by the County Defendants' assertion that they did not seek a protective order at the time of production because "[a]t no time was defense counsel informed that the contents of the IAU Report would be made public." (County Defs.' Opp. to Pl.'s Objections at 7.) A party in possession of unrestricted discovery documents has no legal obligation to inform a counterparty of what it plans to do with those documents. Nor does the Court view in a positive light the County Defendants' refusal to recognize that their failure to seek a protective order at the time of production was an oversight. Nevertheless, the Court can reach no other conclusion than that the County Defendants never intended to consent to the publication of the IAU Report. Rather, their failure to timely seek a protective order was an unintentional mistake—a mistake from which the County Defendants timely attempted to recover when they realized that the plaintiff intended to publish the IAU Report. As such, the Court holds that, given the relatively unique facts of this case, Judge Tomlinson correctly found that no waiver took place. The Court therefore affirms Judge Tomlinson's Order of

15

January 14, 2011, and upholds the protective order preventing public dissemination of the IAU Report.

As an addendum, the Court notes that the plaintiff asserts in her objection that the County Defendants waived their right to seek a protective order not only by producing the IAU Report, but also through various actions and statements related to the contents of the IAU Report. The Court has reviewed the relevant facts and law, and finds that these objections are without merit.

**C. As to the Court's Public Docket in this Case**

Finally, the Press Intervenors have included in their objection a request that all documents filed with the Court in this case be reflected on the Court's docket. Not only do Judge Tomlinson's orders of January 14, 2011 and January 19, 2011 not address this issue, but the Press Intervenors themselves relate that, as of their submission, at least part of—and possibly all of—the asserted failure to maintain a public docket had been ameliorated. Accordingly, the Court denies this portion of the Press Intervenors' objection, with leave to refile a similar request (1) as a separate motion, and (2) setting forth, to the best of the Press Intervenors' knowledge, the documents believed to be presently improperly excluded from the public docket in this case.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the plaintiff's and the Press Intervenors' objections to Judge Tomlinson's Order dated January 14, 2011 are denied, and that order is affirmed; and it is further

**ORDERED** that the plaintiff's and the Press Intervenors' objections to Judge Tomlinson's Order dated January 19, 2011 are dismissed as moot, without prejudice to renew if a final settlement in this case is not consummated; and it is further

**ORDERED** that the portion of the Press Intervenors' objections relating to the proper maintenance of a public docket is denied, without prejudice to renew as set forth in this Order.

**SO ORDERED.**

Dated: Central Islip, New York
August 8, 2011

                                                 _/s/ Arthur D. Spatt_
                                                 ARTHUR D. SPATT
                                                 United States District Judge