**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
SHANNON DORSETT, individually and as the
Administratix of the Estate of JO'ANNA BIRD,

        Plaintiffs,          **MEMORANDUM OF**
                                    **DECISION AND ORDER**
        -against-          10-cv-1258 (ADS)(AKT)

COUNTY OF NASSAU, NASSAU COUNTY
POLICE DEPARTMENT, OFFICE OF THE
NASSAU COUNTY DISTRICT ATTORNEY,
Detective ROBERT ARIOLA, in his official
and individual capacities, Police Officers
And/Or Detectives JOHN AND JANE DOES 1
– 10, District Attorney JOHN AND JANE
DOES 1 – 10, And LEONARD VALDEZ
CRUZ,

        Defendants.
----------------------------------------------------------X
**APPEARANCES:**

**Law Offices of Frederick K. Brewington**
*Attorneys for the Plaintiff*
556 Peninsula Boulevard
Hempstead, NY 11550
    By:    Frederick K. Brewington, Esq.
             Valerie M. Cartright, Esq., of Counsel

**Office of the Nassau County Attorney**
*Attorneys for the Defendants*
1 West Street
Mineola, NY 11501
    By:    Sondra Meryl Toscano, Esq.
             Liora M. Ben-Sorek, Esq., of Counsel

**Greenberg Burzichelli Greenberg P.C.**
*Attorneys for the Proposed Intervenor*
300 Marcus Avenue, Suite 1W7
Lake Success, New York 11042
      By:    Seth H. Greenberg, Esq., of Counsel

**Snitow Kanfer Holtzer & Millus, LLP**
*Attorneys for non-party Peter Schmitt*
575 Lexington Avenue
New York, New York 10022
  By: Paul F. Millus, Esq., of Counsel

**SPATT, District Judge.**

  Presently before the Court is a motion to intervene by non-party the Police Benevolent Association of the Police Department of the County of Nassau, New York, Inc. ("PBA"), to enforce this Court's December 15, 2011 Confidentiality Order ("Confidentiality Order"). For the reasons set forth below, the PBA's motion to intervene is granted and the Court will hold a hearing for the purposes of determining whether Nassau County Legislature Presiding Officer Peter Schmitt is in contempt of the Court's Confidentiality Order and what sanctions, if any, are appropriate.

## I. BACKGROUND

  The Plaintiff Sharon Dorsett commenced the present action on March 19, 2010. This action arises from the March 2009 tragic death of the Plaintiff's daughter Jo'Anna Bird, a young mother, at the hands of Leonardo Valdez-Cruz, her former boyfriend and the father of her child. Valdez-Cruz was tried and convicted for the murder of Jo'Anna Bird and is currently serving his sentence. The Plaintiff brought a series of claims both individually and as the Administratrix of her daughter's estate, asserting, among other things, Section 1983 violations against the individual Nassau County Defendants, municipal liability against Nassau County pursuant to Monell v. Department of Social Services, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), a Section 1983 conspiracy claim against Leonardo Valdez-Cruz and the Nassau County Defendants, as well as claims asserting wrongful death, negligence, and abuse of process.

The nature of this case has attracted the attention of several media organizations as well as the general public, particularly with respect to the contents of a major piece of discovery: Internal Affairs Unit Report 14-2009 ( the "IAU Report"), which documents the Nassau County Police Department's internal investigation into the death of Jo'Anna Bird.  On January 14, 2011, United States Magistrate Judge A. Kathleen Tomlinson issued an extensive memorandum decision and order addressing a motion by the Nassau County Defendants for an injunction and/or protective order prohibiting the disclosure, dissemination, release or revelation of the contents of the IAU Report ("Protective Order").  Judge Tomlinson found that the Defendants established the limited baseline showing of "good cause" to warrant a protective order restricting access to the IAU Report to the parties in this litigation.  (See generally Docket Entry No. 60.)

On July 22, 2011, the parties indicated to the Court that they had reached a settlement agreement and that a stipulation of discontinuance would be filed following payment of the settlement funds.  However, on October 31, 2011, the Plaintiff filed a motion to convert the settlement agreement into a judgment because the Defendants did not pay the monies due under the settlement agreement.  The Defendants contended that the agreement was conditional upon approval by the Nassau County Legislature ("Legislature"), and that the legislative process had yet to be completed.

At a hearing before this Court on December 15, 2011, the County represented to the Court that the delay was due to the desire of the members of the Legislature to see the IAU Report, in order to understand the basis for the significant settlement amount.  In order to facilitate the settlement process and receive final approval or denial of payment by the Legislature, the Court entered a Confidentiality Order on December 15, 2011.  The purpose of the Confidentiality Order was to permit members of the Legislature to have an opportunity to

3

review the IAU Report so they could make an informed decision as to whether to approve the settlement. In particular, the Confidentiality Order stated that

> Notwithstanding the parameters of the protective order . . . the Confidential Material [including the IAU Report] may be disclosed, summarized, described, characterized or otherwise communicated or made available in whole or in part only to members of the currently-sitting Nassau County Legislature and their in-house counsel *for the sole purpose of deliberating the issue of approval of the Settlement Agreement and Release. . . .*
>
> Any conversation, discussion, deliberation, communication regarding, or mention of, the Confidential Material shall be done in Executive Session and*, under no circumstances shall same be communicated, disseminated, released, or disclosed to members of the public, the media or anyone other than duly-elected members of the Nassau County Legislature and their in-house counsel.*
>
> In the event of a breach or violation of any term or condition of this Order, the County Defendants shall have the right to seek enforcement of the terms hereof and the imposition of any other appropriate remedy including, but not limited to, sanctions and contempt.

(Docket Entry No. 128) (emphases added).

The careful procedures for viewing the IAU Report, described in the Confidentiality Order, were meant to ensure that only those designated by the Order would be permitted to review its contents. This rationale was clear at the December 15, 2011 hearing before this Court, when Frederick Brewington, the Plaintiff's Counsel stated:

> You know what's going to happen. I don't want to be a soothsayer, it's going to be clear. I want to say it clearly for the record once we start to put all these things in place to try and show it to certain people, people are going to get this information out. It's going to be partially right and partially wrong. There is going to be a literal flood gate of information going out to the public from the legislature. Because they should have had it from the very beginning and since now they are going to get it under this secretive cloud, there will be all this attempt to get this information, then there will be the blame game going on when aspects of this report goes out to the public from different sources right or wrong as to who did it.

4

(Draft Tr. Dec. 15, 2011, at 25-26.) In response to this statement by Plaintiff's Counsel, John Ciampoli, the Nassau County Attorney, stated on the record "I appreciate those concerns. I just think we need to take the step to see things like that don't continue to happen. That's where I ask the Court's assistance." (Id. at 26.)

However, according to the allegations contained in the present motion, those concerns were not unjustified. On February 7, 2012, in a videotaped Cablevision editorial, Nassau County Presiding Officer Peter Schmitt ("Schmitt") made several statements to an interviewer that the PBA alleges revealed contents of the IAU Report that were protected pursuant to the Court's Confidentiality Order. In part, the transcript of this editorial states:

> Finally, Nassau legislators agreed to award $7.7 million to the family of Jo'Anna Bird, settling a lawsuit over the failure of police to protect the young mother who was brutally murdered despite her repeated pleas for help.
>
> The case demonstrates a top to bottom failure of Nassau's police department.
>
> So says Nassau Presiding Officer Peter Schmitt, telling News 12 he was disgusted by what he learned after reviewing an internal affairs investigation kept confidential by court order.
>
> "There are 22 police officers in this county who were mentioned in that confidential internal affairs report who ought to be ashamed to look at themselves in the mirror every morning when they get up to shave, much less be wearing the badge," Schmitt said. "Orders of protection were ignored . . . mandatory arrests were called for and not performed, giving a cell phone to the prisoner when he was behind bars and allowing him to call the victim 35- 40 times, and on and on and on."
>
> If so, this is incredible. Did officers actually enable Bird's killer to threaten her from behind bars? Should any, as Schmitt suggests, lose their badges? And what of those said to have been disciplined, how were they penalized?
>
> The public is left in the dark.
>
> Though Schmitt has rightly called upon Police Commissioner Thomas Dale to shake up the department in light of all this, more needs to be done. We think Schmitt, County Executive Ed

5

> Mangano and Minority Leader Kevan Abrahams should seek the partial release of this internal affairs document — perhaps with names redacted.
>
> Why cover up this failure to protect a vulnerable citizen? The public has a right to know.

(Greenberg Aff., Ex. 2.)

The PBA now seeks to intervene for the limited purpose of enforcing the Court's December 15, 2011 Confidentiality Order as against Peter Schmitt, or, alternatively, to compel the County Defendants to enforce the terms of the Confidentiality Order.

## II. DISCUSSION

### A. Legal Standard on a Motion to Intervene

Under Federal Rule of Civil Procedure 24(a) ("Fed. R. Civ. P. 24(a)" or "Rule 24(a)"), a putative intervenor of right must establish four criteria: "the applicant must (1) file a timely motion; (2) claim an interest relating to the property or transaction that is the subject of the action; (3) be so situated that without intervention the disposition of the action may impair that interest; and (4) show that the interest is not already adequately represented by existing parties." Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 176 (2d Cir. 2001). "Failure to satisfy any one of these requirements is a sufficient ground to deny the application." Security Pacific Mortg. and Real Estate Servs., Inc. v. Republic of Philippines, 962 F.2d 204, 208 (2d Cir. 1992) (quoting Farmland Dairies v. Comm'r of N.Y. Dep't of Agriculture, 847 F.2d 1038, 1043 (2d Cir. 1988)).

For a party to intervene in a case as of right under Rule 24(a)(2), that party must have an interest in the case that is "'direct, substantial, and legally protectable.'" United States v. Peoples Benefit Life Ins. Co., 271 F.3d 411, 415 (2d Cir. 2001) (quoting Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co., 922 F.2d 92, 97 (2d Cir. 1990)). According to

the Second Circuit, "[a]n interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." Washington Elec., 922 F.2d at 97.

Intervention may also be granted on a permissive basis under Federal Rule of Civil Procedure 24(b) ("Fed. R. Civ. P. 24(b)" or "Rule 24(b)"). Rule 24(b) provides in part:

> On timely motion, the court may permit anyone to intervene who: . . . (B) has a claim or defense that shares with the main action a common question of law or fact. . . . In exercising its discretion the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Permissive intervention is thus within the court's broad discretion. Diversified Group, Inc. v. Daugerdas, 217 F.R.D. 152, 157 (S.D.N.Y. 2003); see U.S. Postal Service v. Brennan, 579 F.2d 188, 192 (2d Cir. 1978). In exercising that discretion, courts consider factors that include "'the nature and extent of the intervenors' interests,' the degree to which those interests are 'adequately represented by other parties,' and 'whether parties seeking intervention will significantly contribute to [the] full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.'" Id. (quoting H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc., 797 F.2d 85, 89 (2d Cir. 1986)). It is notable that "[t]he test is flexible and courts generally look at all of the factors rather than focusing narrowly on any one of the criteria." Mass. Bricklayers and Mason Funds v. Deutsche Alt-A Secs., 273 F.R.D. 363, 365 (E.D.N.Y. 2011).

In considering a motion to intervene, the court must accept as true non-conclusory allegations of the motion. Oneida Indian Nation of Wisc. v. New York, 732 F.2d 261, 265 (2d Cir. 1984); Sackman v. Liggett Group, Inc., 167 F.R.D. 6, 20 (E.D.N.Y. 1996). Allegations that are frivolous on their face need not be considered by the court. Bay Casino, LLC v. M/V Royal

Empress, 199 F.R.D. 464, 466 (E.D.N.Y. 1999). In addition, "an application to intervene cannot be resolved by reference to the ultimate merits of the claims which the intervenor wishes to assert following intervention . . . ." Brennan v. N.Y.C. Bd. of Educ., 260 F.3d 123, 129 (2d Cir. 2001). The putative intervenor has the burden of showing a right to intervene. In re NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. 465, 490 (S.D.N.Y. 1998); Diduck v. Kaszycki & Sons Contractors, Inc., 149 F.R.D. 55, 58 (S.D.N.Y. 1993).

**B. As to the PBA's Motion to Intervene**

While the PBA may have an absolute right of intervention under the circumstances of this case, see In re NASDAQ Market-Makers Antitrust Litigation, 164 F.R.D. 346, 350–51 (S.D.N.Y. 1996) (granting intervention as of right to newspaper to seek modification of protective order and access to documents in judicial proceeding), the Court need not reach the issue because permissive intervention is warranted under Rule 24(b). See Gulf Underwriters Ins. Co. v. The Hurd Ins. Agency, No. 03 Civ. 1277, 2004 WL 2935794, *2 n.3 (D. Conn. Dec. 16, 2004) (concluding that permissive intervention is appropriate and that the "more difficult question" of intervention under Rule 24(a) need not be reached); State of New York v. Reilly, 143 F.R.D. 487, 489 (N.D.N.Y. 1992) ("Having granted the [intervenors'] motions for permissive intervention, there is no need for the court to decide whether or not these applicants are entitled to intervention of right pursuant to Rule 24(a)(2).").

"The fact that the [PBA] referred only to intervention as of right does not foreclose consideration of its application under the standards for permissive intervention." Schiller v. City of New York, No. 04 Civ. 7922, 2006 WL 2788256, at *2 (S.D.N.Y. Sept. 27, 2006). Under the circumstances of this particular case, permissive intervention is the more proper procedural route for intervention by a non-party in a private civil action for the purpose of enforcing or modifying

a confidentiality order. See Palmieri v. State, 779 F.2d 861, 864 (2d Cir. 1985); Martindell v. Int'l Tel and Tel. Corp., 594 F.2d 291, 293 (2d Cir. 1979) ("If the Government had sought and obtained permission from the court to intervene in the action pursuant to Rule 24(b), F.R. Civ. P., for the limited purpose of seeking modification of the protective order, the district court could then have exercised its power under Rule 26(c), F.R. Civ. P., to modify or vacate the order"); Diversified Group, Inc. v. Daugerdas, 217 F.R.D. 152, 157 (S.D.N.Y. 2003) (stating that Rule 24(b) is the proper procedure for a third party to seek modification of a protective order in a private suit) (citing cases). While the Court has not uncovered a case in which a non-party seeks to intervene in a civil suit for the purposes of *enforcing* a confidentiality order, rather than to modify or vacate one, cases dealing with the latter issue are nevertheless instructive.

As an initial matter, the Court must determine whether the PBA has made a timely motion to intervene under Rule 24. A district court has discretion to evaluate the timeliness of a motion to intervene in light of "all the circumstances," including "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." United States v. Pitney Bowes, Inc., 25 F.3d 66, 70 (2d Cir. 1994).

Here, the alleged breach of the Confidentiality Order occurred on February 7, 2012, and the PBA moved to intervene to enforce the terms of the Order on February 23, 2012. Thus, the present applicant had notice of the interest for only two weeks before it made the motion to intervene. This period of time is of such a short duration that the Court finds that no prejudice resulted to any of the parties or to Schmitt due to this minimal delay. Also, it was logical for the

9

PBA to wait a certain period of time to confirm that the Nassau County Defendants would not make their own motion to enforce the Confidentiality Order.

Moreover, "[w]hen considering a motion for permissive intervention, a court must examine whether intervention will prejudice the parties to the action or cause [undue] delay." Envirco Corp. v. Clestra Cleanroom, Inc, No. 98 Civ. 120, 2002 WL 31115664, at *4 (N.D.N.Y. Sept. 24, 2002) (citing D'Amato v. Deutsche Bank, 236 F.3d 78, 84 (2d Cir. 2001)). The Court finds that there is no risk of undue delay or prejudice because the underlying case has been closed for nearly one year. "Rule 24(b)'s timeliness requirement is to prevent prejudice in the adjudication of the rights of the existing parties, a concern not present when the existing parties have settled their dispute and intervention is for a collateral purpose." United Nuclear Corp. v. Cranford Ins. Co., 905 F.2d 1424, 1427 (10th Cir. 1990); see E.E.O.C. v. Nat'l Children's Ctr., Inc., 146 F.3d 1042, 1047 (D.C. Cir. 1998) (quoting Pansy v. Borough of Stroudsburg, 23 F.3d 772, 779 (3rd Cir. 1994)) ("'[I]ntervention to challenge confidentiality orders may take place long after a case has been terminated.'"). Thus, the Court finds that the PBA made the present motion in a timely fashion and there is no resulting prejudice to the parties to the action.

Second, the PBA has demonstrated a legitimate interest in the non-disclosure of the IAU Report at issue, pursuant to the terms of this Court's previous Protective Order and Confidentiality Order. The PBA has vehemently asserted its interest in protecting this material since the outset of this litigation, as evidenced by the *amicus curiae* brief it filed in support of the initial confidentiality order. As articulated by the PBA, it has "a unique interest in protecting and advancing the rights of its members under federal, state, and local laws." (Motion to Intervene, at 10). In particular, the unnamed Police Defendants and PBA members may be subject to disciplinary charges and are entitled to due process hearings under state and local laws, and their

10

rights under these proceedings may be impaired if the identities of the officers or details of the IAU Report are revealed to the public. In addition, Section 50(a) of the New York State Civil Rights Law limits the disclosure of personnel records in order to protect police officers from the use of these records in a way that exposes unsubstantiated and irrelevant complaints of misconduct as a means of encouraging harassment and reprisals. See Prisoners' Legal Servs. v. N.Y. State Dep't of Correctional Servs., 73 N.Y.2d 26, 535 N.E.2d 243, 538 N.Y.S.2d 190 (1988). The Court finds this asserted interest to be substantial.

Furthermore, these concerns played a large role in why the IAU Report was categorized as confidential in the first instance. As stated by Judge Tomlinson,

> In addition, the privacy interests of third parties carry great weight in the balancing of interests . . . Here, the IAU Report contains the names of numerous officers not yet parties to this litigation as well as witnesses and other third-parties not related to this action whose privacy interests would be seriously jeopardized with the publication of the IAU Report. . . . This interest, as it pertains to those officers named in the IAU Report yet not named as Defendants in this action, is further argued in the *amicus brief* submitted by the firm Greenberg Burzichelli Greenberg P.C. on behalf of the [PBA]. The PBA states that pursuant to state and local law, when an officer is served with a charge or specification, he is entitled to a due process hearing or can elect to proceed to final and binding arbitration. Therefore, the PBA argues that those officers who may be subject to discipline based on findings contained within the IAU Report, created from a source external to the accused officers, would be unfairly prejudiced if the Report was disseminated to the public prior to the full adjudication of any disciplinary proceeding.

Dorsett v. Cnty. of Nassau, 762 F. Supp. 2d 500, 521, 521 n.8 (E.D.N.Y. 2011). Even Schmitt's alleged statements, when he declared that the officers "ought to be ashamed" and "much less wearing be wearing the badge", insinuated exactly what the Confidentiality Order was meant to protect against — a means of encouraging harassment and reprisals. Thus, the Court recognizes that the PBA has a significant interest in protecting the due process rights of its members.

While recognizing these asserted arguments for confidentiality of the IAU Report, Schmitt argues that the interest the PBA seeks to protect was not invoked by his statements. In particular, Schmitt argues that because his comments did not explicitly point out the identities of the officers, nor offer any other potentially identifying information, his interview did not touch upon the interests asserted by the PBA.

However, the Court agrees with the PBA that its interests should not be cast so narrowly. While certainly the protection of the specific identities of the officers was a concern of the utmost importance underlying the issuance of the Protective Order and the Confidentiality Order, it is not the case that the Court's Confidentiality Order permitted dissemination of the IAU Report's substance without disclosing the particular names of the officers involved. Rather, the Order prohibited *any* "discussion, deliberation, communication regarding, or mention of the Confidential Material", so that there would be no danger that the identities of the officers could potentially be revealed, as well as to address other concerns thoroughly explored in Judge Tomlinson's Protective Order. By revealing detailed content from the IAU Report, even without mentioning specific officers' names, Schmitt may have engaged in conduct that was expressly prohibited and potentially impaired the PBA's broader and legitimate interest to advance the professional interest of its members; preserve their health, safety and welfare; and "protect and advance their legal rights." (Greenberg Aff., Ex. 2.) In any event, the Court finds that if it assumes the PBA's allegations are true, that contrary to Schmitt's assertions, he did provide certain identifying information according to the PBA's motion, such as the number of officers that were involved as well as the fact that these officers were all males. (See id. ("There are 22 police officers in this county who were mentioned in that confidential internal affairs report who

12

ought to be ashamed to look at themselves in the mirror every morning when they get up to shave.").)

In opposition, Schmitt asserts that most of his statements are general facts that could be gleaned from a review of the Complaint in the present case. The Court disagrees. After a review of the statements at issue and the allegations contained in the Complaint, there appear to be significant differences between the two, such as the number of officers involved as well as the comment regarding Cruz's alleged use of a cell phone. Neither of these facts were in the Complaint. In addition, even if Schmitt's statements are comparable to those statements in the Complaint, a pleading consists of mere allegations, whereas Schmitt's alleged disclosures to the media were apparently specifically made in reference to the factual findings contained in the IAU Report.

Also, where a movant has a sufficient interest in the litigation, as the PBA does here, "the degree to which [the putative intervenor's] interests are adequately represented by other parties" is an additional relevant factor in the permissive intervention determination. Citizens Against Casino Gambling in Erie Cnty. v. Hogen, 704 F. Supp. 2d 269, 286 (W.D.N.Y. 2010) (quoting Lovely H. v. Eggleston, No. 05 Civ. 6920, 2006 WL 3333084, at *3, 2006 U.S. Dist. LEXIS 83424, at *8 (S.D.N.Y. Nov. 16, 2006)).

There is no reason to believe that the PBA's interest is necessarily coextensive with those of the parties, so that the PBA's interest would be adequately represented by the Plaintiff or the Defendants in this action. From the outset of this litigation, the Plaintiff's Counsel has made his position clear that the entire contents of the IAU Report should be made public. While he has respected the Court's previous orders to date with reasonable certainly, the Plaintiff has little, if any, motivation at this point in time to bring any motion to find Schmitt in contempt of court. As

for the Defendants, more than three months have passed since Schmitt's comments to the press, and thus it is reasonable to assume that no other Defendant will be moving to enforce the Confidentiality Order.

Moreover, "[w]hether or not representation of an intervenor's interest by existing parties is to be considered inadequate hinges upon whether there has been a showing of '(1) collusion; (2) adversity of interest; (3) possible nonfeasance; or (4) incompetence.'" Hoblock v. Albany County Bd. of Elections, 233 F.R.D. 96, 99 (N.D.N.Y. 2005) (quoting British Airways Bd. v. Port Auth. of New York & New Jersey, 71 F.R.D. 583, 585 (S.D.N.Y. 1976)). Here, although the Nassau County Police Department ("NCPD") is a defendant, it is not necessarily true that the PBA's interests are aligned with the NCPD. As articulated by the PBA, "[t]he NCPD represents the department as a whole, the police force and their office actions, but the PBA is charged with protecting the individual officers and safeguarding their interests." (Motion to Intervene, at 10.) Thus, the Court finds that the PBA's interest is not already adequately represented by existing parties, and therefore, is entitled to proceed with this legal recourse.

Finally, intervention by the PBA for the limited purpose of enforcing the Confidentiality and Protective Orders will not impede the progress of the litigation, as this case has already been settled and closed.

In sum, after consideration of the relevant factors, the Court grants the PBA's motion to intervene on a permissive basis.

**C.  As to the Purpose for the Intervention**

Federal Rule of Civil Procedure 37(b)(2) states that a court may "treat[ ] as contempt . . . the failure to obey any order except an order to submit to a physical or mental examination." Fed. R. Civ. P. 37(b)(2); see also 18 U.S.C. § 401 ("A court of the United States shall have

14

power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as— . . . (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."). The Advisory Committee Notes make clear that noncompliance with protective orders issued pursuant to Rule 26(c) may be sanctioned under this provision. See 1970 Advisory Committee Note to Fed. R. Civ. P. 37 at 207 (2011 ed.); see also Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse § 48(A)(2) (4th ed. 2008). The Second Circuit generally instructs that "[a] party may be held in civil contempt for failure to comply with a court order if (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tech., Inc., 369 F.3d 645, 655 (2d Cir. 2004).

Under Rule 37(b)(2)(C), a finding of contempt may also lead to an award of "reasonable expenses, including attorney's fees, caused by the failure [to comply]," payable by either the offending party, its attorney, or both. A court is "free to consider the full record in the case in order to choose the appropriate sanction." Southern New England Tel. Co., 624 F.3d at 144. However, a court need not find willfulness or bad faith as a prerequisite to a contempt finding pursuant to Rule 37. See Paramedics, 369 F.3d at 655. Of importance, "[i]t is well-settled that a court's contempt power extends to non-parties who have notice of the court's order and the responsibility to comply with it." Bridgeport Guardians v. Delmonte, 371 F. Supp. 2d 115, 121 n.5 (D. Conn. 2005) (quoting Chicago Truck Drivers v. Bhd. Labor Leasing, 207 F.3d 500, 507 (8th Cir. 2000)).

The Court's December 15, 2011 Confidentiality Order explicitly states that "[a]ny conversation, discussion, deliberation, communication regarding, or mention of, the Confidential

Material . . . under no circumstances shall same be communicated, disseminated, released, or disclosed to members of the public, the media or anyone other than duly-elected members of the Nassau County Legislature and their in-house counsel." (Docket Entry No. 128.) The opposition to the instant motion to intervene devotes most of its attention as to why Schmitt's breach does not impair the PBA's interests and why the particular circumstances of this case do not warrant sanctions. However, Schmitt does not attempt to assert that he was not aware of his obligations under the Court's Confidentiality Order or that he did not technically violate its terms. Notably, Schmitt argues that "significant details in the IAU Report were not discussed" but "with the exception of the comments concerning Mr. Valdez Cruz's alleged use of a cell phone . . ." (Millus Decl. at ¶ 15.) Thus, Schmitt essentially acknowledges that he failed to fully comply with the Court's Confidentiality Order. Based upon the submissions provided to the Court, it appears that his failure to comply with the Confidentiality Order is clear and convincing.

Schmitt points out that a civil contempt sanction should not be used for purposes that are purely punitive. However, if the Court utilized its discretion to impose sanctions, it would not be doing so solely to chastise Schmitt as punishment. Rather, sanctions in the context of these particular circumstances would be imposed to compel the contemptor into future compliance with the Court's Confidentiality Order, which Schmitt has arguably disregarded. His somewhat equivocal promise that "[t]here is little likelihood that Presiding Officer Schmitt will speak on the matter again as it relates to the precise findings of the IAU report, and his fleeting comments were made only at the time the Legislature approved the multi-million dollar settlement amount" does not completely relieve the concern that he will partake in this type of alleged conduct again.

16

Schmitt has not even made an absolute commitment that he will comply with the Court's Order in the future.

Nevertheless, "due process does require notice and a hearing before a finding of contempt is made and before the imposition of contempt sanctions so that the parties have an opportunity to explain the conduct deemed deficient . . . and that a record will be available to facilitate appellate review." Harris v. City of Philadelphia, 47 F.3d 1311, 1322 (3d Cir. 1995). "For an indirect contempt, such as failure to obey a court order, it is appropriate to give notice by an order to show cause and to hold a hearing" Id.; see E.E.O.C. v. Local 638, 81 F.3d 1162, (2d Cir. 1996) ("A party charged with contempt of court [except where the contempt is made in court and is summarily punished] is entitled to notice and an opportunity to be heard."); Interdynamics, Inc. v. Firma Wolf, 653 F.2d 93, 97 (3d Cir. 1981), cert. denied, 454 U.S. 1092, 102 S. Ct. 658, 70 L. Ed. 2d 631 (1981) ("Since failure to obey a court judgment is an indirect contempt, notice by an order to show cause and a plenary hearing are appropriate."); see also Roe v. Operation Rescue, 920 F.2d 213, 217 (3d Cir. 1990) (noting that due process before imposing civil contempt requires an "opportunity granted at a meaningful time and in a meaningful manner for a hearing appropriate to the nature of the case").

Therefore, non-party Peter Schmitt is directed to show cause on May 31, 2012 at 10:00 am why this Court should not find him in contempt of the Court's December 15, 2011 Confidentiality Order.

### III. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that the PBA's motion to intervene is granted; and it is further

17

**ORDERED**, that non-party Peter Schmitt is directed to show cause on May 31, 2012 at 10:00 am why this Court should not find him in contempt of the Court's December 15, 2011 Confidentiality Order; and it is further

**ORDERED**, that the PBA is directed to personally serve a copy of this Order on all of the parties to the action, in addition to Peter Schmitt.

**SO ORDERED.**
Dated: Central Islip, New York
May 22, 2012

_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge